# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1304

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Ashkelon Barrett, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 23, 2008
Filed: January 14, 2009

_____

Before LOKEN, Chief Judge, WOLLMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Ashkelon Barrett pleaded guilty to possession of a firearm after one or more prior convictions for misdemeanor crimes of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2), and distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). The district court[1] sentenced Barrett to 120 months' imprisonment on both counts to run concurrently, followed by three years of supervised release, and imposed a $200 assessment. Barrett appeals, arguing that the district court: (1) abused its discretion by varying his sentence upward based on

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

improper factors; (2) improperly applied a four-level sentencing enhancement based on use of body armor; and (3) failed to give Barrett his right to allocution before sentencing him. We affirm.

## I. *Background*

On the night of January 28, 2007, and into the early morning hours the following day, Barrett celebrated his birthday with two friends. During the festivities, Barrett carried a loaded 9mm Glock handgun and wore a bulletproof vest. Barrett and his friends also used an "8-ball" (3.5 grams) of methamphetamine that Barrett supplied. During the course of the evening, Barrett argued with one of his friends. The argument escalated at times to physical altercation, with Barrett striking the friend on his head with the Glock three times. Later that evening, Barrett brandished the Glock at the friend and then stole the friend's vehicle.

On January 29, 2007, law enforcement officers responded to a call of shots fired and an automobile accident in Cedar Rapids, Iowa. After smoking methamphetamine together, Barrett and James Maclin were involved in an argument concerning a music compact disc. This argument also escalated to violence, with Barrett shooting at Maclin and grazing Maclin's head. Maclin drove away and Barrett followed him in the vehicle that he had taken at gunpoint in his first encounter. Barrett's and Maclin's vehicles collided. Barrett fled the scene on foot. Later, he threw the gun into the Cedar River.

On the evening of January 29, 2007, Barrett stole another car and drove it to various cities across Iowa. During his trip, Barrett used a credit card that he found in the stolen vehicle to pay for gas. On January 30, 2007, Barrett returned the stolen vehicle to its original location. He was later apprehended at a convenience store in Cedar Rapids.

Barrett pleaded guilty to possession of a firearm after having been convicted of a misdemeanor crime of domestic violence, pursuant to 18 U.S.C. §§ 922(g)(9) and 924(a)(2) ("Count 1"), and distribution of methamphetamine pursuant to 21 U.S.C. § 841(a)(1), (b)(1)(C) ("Count 2"). Barrett's presentence investigation report established a Guidelines range of 84 to 105 months, which included a four-level enhancement for use of a bulletproof vest. At sentencing, the court varied upward and imposed a sentence of 120 months based on Count 1. The court did so before allowing Barrett his Federal Rule of Criminal Procedure 32(i)(4) right to allocution. After pronouncing sentence on Count 1, the court allowed Barrett to speak and then imposed a concurrent 120-month sentence on Count 2.

## II. *Discussion*

In this appeal, Barrett argues that the district court: (1) abused its discretion by varying his sentence upward based on improper factors; (2) improperly applied a four-level sentencing enhancement based on U.S.S.G. § 3B1.5; and (3) failed to give him his right to allocution before sentencing him.

## A. *Variance*

Barrett first argues that the district court abused its discretion by varying upward based on the 18 U.S.C. § 3553(a) factors. He contends that a court may not consider a defendant's criminal history that has already been included in the calculation of that defendant's criminal history category. We review Barrett's argument as an attack on the overall reasonableness of the sentence and will only overturn that sentence if we find that the district court abused its discretion. *See Gall v. United States*, 128 S. Ct. 586, 591 (2007) (holding that "courts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard"). An abuse of discretion occurs when a district court "fails to consider a relevant factor that should have received significant weight; . . . gives significant weight to an improper or irrelevant factor; or . . . considers only the appropriate factors but in weighing those factors

commits a clear error of judgment." *United States v. Saddler*, 538 F.3d 879, 890 (8th Cir. 2008) (internal quotations and citations omitted).

Section 3553(a) allows courts to vary upward based on an underrepresented criminal history or recidivism. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A), (a)(2)(C); *United States v. Fogg*, 409 F.3d 1022, 1026 (8th Cir. 2005) (allowing departure where criminal history indicated high likelihood that defendant would commit other crimes). But Barrett argues that the district court may not consider these factors when varying a sentence if they have already been included in the criminal history category. Barrett relies on *United States v. Rouillard*, 474 F.3d 551 (8th Cir. 2007), for this proposition. In *Rouillard*, a pre-*Gall* case, we held that the district court abused its discretion by granting too much weight to the appellant's past criminal conduct, considering that such conduct was already partially recognized by the appellant's criminal history category. *Id.* at 558. After the appellant pleaded guilty to being a felon in possession of a firearm, the district court varied upward by eight levels, or 111%, and sentenced him to 120 months' imprisonment. *Id.* at 553, 557. The trial court varied due, in part, to the nature and circumstances of the offense and the appellant's criminal history. *Id.* at 556. We reversed, holding that because the nature and circumstances of the offense were not "extraordinary," the substantial variance by the district court was not justified. *Id.* at 557–58. Moreover, the variance was predicated on past criminal conduct that had already been at least partially accounted for by the Guidelines. *Id.*

We expressly stated in *Rouillard* that a court may vary upward based on criminal history even though that history has already been accounted for in the Guidelines. *Id.* at 556–57. Our court reversed the lower court because that court did not give "extraordinary" reasons for its "substantial" variance. *Id.* at 558. Since *Rouillard*, the United States Supreme Court has rejected this line of appellate reasoning. *Gall*, 128 S. Ct. at 595. Now, we review the reasonableness of the sentence, giving due deference to the lower court for any variance imposed. *Id.* at 594–95, 600.

Here, Barrett's Guidelines range was properly calculated at 84 to 105 months. The district court considered the § 3553(a) factors and varied upward, imposing a sentence of 120 months. The court based this variance on Barrett's past history of assault against multiple victims, his admitted drug use of a variety of street drugs, including marijuana and crystal methamphetamine, and his likelihood of committing yet another violent offense. Giving the district court due deference, we do not find Barrett's sentence unreasonable. Moreover, because a court may consider a defendant's criminal history even if that history is included in the defendant's criminal history category, we cannot say that the district court abused its discretion by giving too much weight to an improper factor.

## B. *Enhancement*

Barrett next argues that he did not "use" body armor according to § 3B1.5 because he simply wore a bulletproof vest while attending a party with his friends. He contends that according to U.S.S.G. § 3B1.5 and its accompanying note, the vest must be used in a manner to protect himself from gunfire while committing the offenses. Barrett avers that he should not have been given a four-level enhancement under § 3B1.5 because he was with friends and merely wore the vest as a party gag and not in a drug transaction; thus, he did not actively employ the vest.

Section 3B1.5 of the Guidelines provides a four-level enhancement if: (1) "the defendant was convicted of a drug trafficking crime or a crime of violence" and (2) "the defendant used body armor during the commission of the offense, in preparation for the offense, or in an attempt to avoid apprehension for the offense." "Use" is defined as "active employment in a manner to protect the person from gunfire." U.S.S.G. § 3B1.5 cmt. n.1. Therefore, we must determine whether Barrett actively employed the bulletproof vest to protect himself from gunfire and whether the district court properly enhanced his sentence. The interpretation and application of the Guidelines are reviewed de novo, and the district court's factual findings are reviewed for clear error. *United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005).

Here, Barrett does not dispute that the vest could function as body armor, nor does he dispute that he wore the vest throughout the evening. Barrett wore the vest while distributing methamphetamine to his friends. Later, he wore the vest while threatening his "friends" with a gun. And, finally, the vest provided personal security when he shot one of his "friends." Barrett's claim that he wore the vest merely as a fashion statement to celebrate his 21st birthday is meritless. Barrett's "fashion statement" did double duty as a protective shield in case others also carried firearms and were equally disposed to use them. The ability of body armor to serve dual purposes does not make § 3B1.5 inapplicable where the facts show one purpose could be to protect the wearer from gunfire. Barrett's friends did not return fire when he fired his weapon, but the vest served its intended protective function nonetheless. Therefore, we hold that the district court did not clearly err in finding that Barrett used the body armor in commission of a drug trafficking crime or crime of violence.

## C. *Allocution*

Finally, Barrett argues that the district court plainly erred when it sentenced him on Count 1 before allowing him his right of allocution as required by Federal Rule of Criminal Procedure 32(i)(4). That rule states that a court must: (1) "provide the defendant's attorney an opportunity to speak on the defendant's behalf" and (2) "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4). Because Barrett did not object on this basis below, we will review for plain error. *United States v. Evans*, 272 F.3d 1069, 1080 (8th Cir. 2001).

After a preliminary finding on Count 1, the district court allowed Barrett to speak before imposing the sentence for Count 2. We hold that the district court's actions sufficiently provided Barrett his right of allocution. After indicating its intention to impose a 120-month sentence on Count 1, the district court allowed

Barrett an opportunity to speak. *United States v. Boose*, 403 F.3d 1016, 1017 (8th Cir. 2005). The court then imposed a 120-month sentence on Count 2. Because Barrett was permitted to speak before the court imposed his sentence, the court did not plainly err.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____