# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1423

_____

United States of America,

*Plaintiff - Appellee,*

v.

Arthur Waters,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 16, 2017
Filed: February 28, 2018
[Published]

_____

Before COLLOTON and GRUENDER, Circuit Judges, and READE,[1] District Judge.

_____

PER CURIAM.

Arthur Waters entered a conditional plea of guilty to one count of unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, sitting by designation.

§§ 922(g)(1) and 924(a)(2). The district court[2] sentenced Waters to 87 months' imprisonment, followed by three years of supervised release. On appeal, Waters challenges the district court's order denying his motion to suppress evidence seized during a search of his residence while executing an arrest warrant. Waters also challenges his subsequent sentence as substantively unreasonable. We affirm.

I.

On September 3, 2015, officers from the Kansas City, Missouri Police Department obtained information that Waters was residing with his fiancée, Dannaica James, and two children at 2202 Monroe, Kansas City, Missouri. Waters had outstanding warrants for his arrest. Officers surveilled the residence. That same day, officers stopped the vehicle of an individual known to associate with Waters. The individual identified a photo of Waters and stated that Waters was his source for illegal drugs. The individual made a controlled call to Waters, during which Waters stated that he was at the residence, he would be there for awhile and had what the individual was requesting.

Several hours after the controlled call, officers observed James leaving the residence. James left the residence, walked a short distance, stopped and went back to the residence. James knocked on the door and someone inside opened the door. James then entered the residence and left again approximately thirty seconds later. After James entered her vehicle, which was located twenty to thirty yards from the residence, officers detained her at that location. She informed officers that Waters was inside the residence and that no one else was present.

---

[2]The Honorable Greg Kays, Chief Judge, United States District Court for the Western District of Missouri, adopting the report and recommendation of the Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri, with respect to the motion to suppress.

Officers subsequently surrounded the residence, prepared to forcibly enter if necessary. James called Waters to inform him that officers were outside waiting for him and asked him to come to the door. Waters told James to "hold on." As officers approached, they observed window blinds move on the second floor of the south side of the residence. Approximately thirty seconds later, officers observed window blinds move on the first floor near the west side of the residence. Specifically, it appeared that someone had pulled down a blind to look outside.

Detective Michael Miller knocked, announced the officers' presence and instructed Waters to come outside. Officers announced their presence several times. They did not receive a response. Ultimately, a sergeant authorized entry into the residence. Officers forcibly breached the back door, which opened into a utility room. Officers moved through the utility room into the kitchen and heard Waters state that he was "coming down," presumably from the second floor. The stairway was not visible from the kitchen. Officers encountered Waters in the living room, which was adjacent to the kitchen, and directed him into the kitchen. Officers took Waters into custody. He was handcuffed, searched for weapons and eventually removed from the residence.

Officers conducted a protective sweep of the first floor to check for individuals who might pose a threat to their safety. Officers observed marijuana and related paraphernalia in plain view in the living room. Officers observed a large couch situated against a wall in the living room. The couch was flanked by two end tables approximately a foot away. The bottom of the couch was about half the width of a dollar bill off the floor.

In the living room, Deputy United States Marshal Jason Roberts bumped the couch with his hip to determine the weight of the couch. The force slid the couch on the tile floor. Deputy Roberts then pushed one side of the couch away from the wall to see if anyone was hiding behind or inside it. He observed part of a firearm on the

floor underneath the couch. The firearm was lying just over one tile square away from the wall.

A grand jury charged Waters with one count of possession of a firearm as a previously convicted felon. Waters moved to suppress all evidence obtained as a result of the protective sweep of the residence. The district court ruled that the sweep was lawful pursuant to *Maryland v. Buie*, 494 U.S. 325 (1990). Waters entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2), reserving the right to appeal the denial of his motion to suppress.

At sentencing, Waters's total adjusted offense level was 17 and he had a criminal history category of IV, resulting in a Guidelines range of 37 to 46 months' imprisonment. After considering the factors at 18 U.S.C. § 3553(a), the district court varied upward to a sentence of 87 months' imprisonment.

Waters raises two issues on appeal. First, he challenges the district court's denial of his motion to suppress evidence and argues that the scope of the protective sweep was unconstitutional. Second, he contends that his sentence was substantively unreasonable.

II.

When reviewing a district court's denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions de novo. *See United States v. Wright*, 844 F.3d 759, 762 (8th Cir. 2016).

Under the Fourth Amendment, the search of a residence is generally unreasonable "without a warrant issued on probable cause." *Buie*, 494 U.S. at 331. An exception to the general warrant requirement of the Fourth Amendment is the protective sweep. "A 'protective sweep' is a quick and limited search of premises,

incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Id.* at 327. A protective sweep must be supported by "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 337.

We have recognized the importance of officers' safety when conducting a home arrest. *See United States v. Alatorre*, 863 F.3d 810, 814 (8th Cir. 2017). "Protective sweeps in these circumstances are justified because officers are vulnerable during an arrest at a home, even when the arrestee and other occupants have been secured . . . ." *Id.*; *see also United States v. Davis*, 471 F.3d 938, 944 (8th Cir. 2006) ("A protective sweep is justified by the threat of accomplices launching a surprise attack during an arrest and is particularly important during an in-home arrest, due to the heightened potential for an ambush in unfamiliar surroundings.").

The district court properly found that the protective sweep was permissible under the Fourth Amendment. Waters contends that the protective sweep was unconstitutional because he was immediately arrested and removed from the premises before officers conducted the sweep. Although the exact timing is unclear, the record establishes that officers began the protective sweep either contemporaneously with, or immediately following, Waters's arrest. The sweep is not invalid merely because Waters may have been removed from the immediate area during, or preceding, the sweep. Indeed, we have found protective sweeps to be permissible where the defendant was apprehended and removed from the immediate area of arrest before the sweep occurred. *See United States v. Boyd*, 180 F.3d 967, 975-76 (8th Cir. 1999); *see also Alatorre*, 863 F.3d at 814-15.

Waters also challenges the district court's conclusion that officers could have reasonably believed that the residence contained another person who posed a threat to their safety. The district court supported its finding with specific and articulable

-5-

facts from which a reasonable officer could have concluded that another person was in the residence. In particular, officers observed window blinds move in both an upstairs and downstairs window within a short period. Because Waters was descending the stairs when officers entered the residence, it was reasonable for officers to conclude that Waters was not the person who moved the downstairs blind. Additionally, James called Waters as the officers approached the residence and informed him that officers were waiting outside for him. The officers also announced their presence multiple times before breaching the door. These circumstances provided anyone in the residence ample time to hide before officers entered the residence. Accordingly, it was reasonable for officers to believe that the residence could contain another person.

Further, we have recognized the association between drug offenses and violence in upholding protective sweeps of residences of known drug traffickers. *See United States v. Cash*, 378 F.3d 745, 748-49 (8th Cir. 2004). Here, officers were aware that Waters had distributed illegal drugs in the past and, based on the controlled call, could ostensibly supply the informant with drugs that day. The presence of drugs was also immediately ascertainable to officers upon entering the living room, where marijuana and drug paraphernalia were found in plain view. That officers did not have exact details on the extent of Waters's distribution of illegal drugs does not render the district court's finding erroneous. It was reasonable for officers to believe that any other person in the residence was dangerous.

We further find no error in the district court's ruling that the couch could have harbored a dangerous individual. Waters contends that no officer could have reasonably believed that the couch concealed an individual. However, Deputy Roberts testified that he had been involved in hundreds of arrests and received formal training on performing protective sweeps. He noted that he had learned to check any place that a person could hide, including closets, behind doors and inside and behind furniture. Similarly, Detective Miller testified that he had been involved in hundreds

of arrests and was familiar with protective sweeps. He testified that police had found individuals in refrigerators, stairwells, under beds, between mattresses and, in one instance, inside a couch where a fold-up mattress should be. Deputy Roberts testified that, when he performed his "hip check" of the couch, it moved easily on the tile floor, suggesting that someone could have moved the couch to hide. The district court found that the couch was large enough that an individual could hide behind or inside it. Based on these facts, it was not clearly erroneous for the district court to conclude that the couch could conceal a person. Our sister circuits have similarly recognized the reasonableness of an officer's belief that a couch could conceal an individual. *See, e.g.*, *United States v. Paopao*, 469 F.3d 760, 767 (9th Cir. 2006). We conclude that there was no error in the district court's determination that the protective sweep was constitutional under *Buie*.

Because we affirm on the above-articulated grounds, we do not address the government's alternative argument that a search behind the couch was justified as an area immediately adjoining the place of arrest and from which an attack could be immediately launched. *See Buie*, 494 U.S. at 334 ("[A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets or other spaces immediately adjoining the place of arrest from which an attack could be immediately launched."). The district court properly denied the motion to suppress evidence.

### III.

We engage in a two-part review of a district court's sentence: first, we review for significant procedural error; and second, absent significant procedural error, we review for substantive reasonableness. *See United States v. Hairy Chin*, 850 F.3d 398, 402 (8th Cir. 2017). Waters does not contend that the district court committed procedural error. His sole contention on appeal is that his sentence was substantively unreasonable.

We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. *See United States v. Chavarria-Ortiz*, 828 F.3d 668, 672 (8th Cir. 2016). District courts enjoy wide latitude when applying the sentencing factors in 18 U.S.C. § 3553(a) and are free to "assign some factors greater weight than others." *Id.* It will be an "unusual case" that we find a sentence substantively unreasonable, regardless of whether the sentence is within, above or below the Guidelines range. *United States v. Kelley*, 652 F.3d 915, 918 (8th Cir. 2011). If a district court varies beyond the Guidelines range, we consider the extent of the variance but "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Ferguson v. United States*, 623 F.3d 627, 631 (8th Cir. 2010) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Waters contends that the district court gave undue weight to his criminal history. He further argues that the district court relied on considerations that are already accounted for in the Guidelines. Finally, he contends that his conviction for robbery in 1999, which received no criminal history points, was properly accounted for because his conviction for robbery in 2000 scored additional points since the 1999 robbery was unscored. He notes that, even if the 1999 robbery had received full criminal history points, the sentence imposed was still substantially higher than the resulting Guidelines range would have been.

None of these arguments alone or collectively persuade us that the district court abused its considerable discretion. The district court stated that it considered all of the factors at 18 U.S.C. § 3553(a) in reaching its decision to vary upward from the Guidelines. The district court discussed several of the factors in detail and concluded that a sentence within the Guidelines range would not result in adequate punishment, would not be an adequate deterrent and would not protect the public. The district court cited Waters's lengthy history of serious and violent criminal behavior, including multiple convictions for robberies and assaults. That Waters's criminal

-8-

history is a factor already considered in the computation of the Guidelines range does not render the district court's consideration of it under § 3553(a) erroneous. *See United States v. Bacon*, 848 F.3d 1150, 1152-53 (8th Cir. 2017) (per curiam); *see also United States v. Barrett*, 552 F.3d 724, 726 (8th Cir. 2009) (recognizing the district court's authority to vary upward for underrepresented criminal history under § 3553(a)). The district court's careful consideration of the § 3553(a) factors supported the sentence imposed and provided ample justification for the same. *See United States v. Feemster*, 572 F.3d 455, 462 (8th Cir. 2009) (en banc) ("We *may not* require "'"extraordinary" circumstances to justify a sentence outside the Guidelines' . . . ." (quoting *Gall*, 552 U.S. at 47)). We conclude that there was no abuse of discretion.

IV.

The judgment of the district court is affirmed.

_____