# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2232
_____

United States of America

*Plaintiff - Appellee*

v.

Michael Scott Hanuman

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: June 19, 2020
Filed: August 18, 2020
[Unpublished]
_____

Before GRUENDER, WOLLMAN, and KOBES, Circuit Judges.
_____

PER CURIAM.

Michael Scott Hanuman entered a conditional guilty plea to charges of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and possession of a firearm in furtherance of a drug-

trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). The district court[1] sentenced Hanuman to 172 months' imprisonment. We affirm.

Deputies from the Dakota County Sheriff's Department were dispatched to Hanuman's residence shortly before midnight on January 6, 2018. The deputies knew that Hanuman was on probation for possessing firearms, that he had a history of drug use, and that he had multiple surveillance cameras around his residence. Lights were on inside Hanuman's home when the deputies arrived, a vehicle was parked in the attached garage, and a second vehicle was parked in the driveway. Deputies knocked on the front door and heard a woman crying for help. After receiving permission from their supervisor, the deputies breached the door and found the woman lying motionless at the bottom of the stairs, moaning and yelling in pain and appearing to be having trouble breathing. One deputy stated that the woman yelled and screamed that, "Mike was here" or "Mike is here," and that he had assaulted her, though she did not know whether he was armed. Another deputy's post-arrest report asserted that the victim had also indicated that just Mike was present in the house. Upon observing visible marks and redness on the woman's face, the deputies called for an ambulance. While they were awaiting its arrival, one of the deputies administered oxygen to her from his medical bag.

Because Hanuman did not respond when the deputies began calling to him, two of the deputies began searching the house for him. The other two deputies soon found Hanuman crouching in front of the vehicle in the garage, where they were joined by the two house-searching deputies. After handcuffing and arresting Hanuman, the deputies discovered a large amount of cash on his person. Hanuman did not respond when twice asked if there was anyone else in the home. The deputies

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Steven E. Rau, United States Magistrate Judge for the District of Minnesota, now deceased.

then conducted a some three-minute protective sweep of the residence, during which they observed evidence of drug distribution. They thereafter obtained a search warrant based in part on the evidence viewed during the protective sweep. Their subsequent warrant-authorized search revealed further evidence of drug distribution, as well as firearms and ammunition.

The district court denied Hanuman's motion to suppress evidence, concluding that the protective sweep was justified because of the officers' reasonable belief that other persons could be hiding within the residence. On appeal, Hanuman argues that the protective sweep violated his Fourth Amendment rights, contending that the protective sweep was unnecessary because he had already been handcuffed and placed under arrest and because the victim had indicated that no one other than he was present.

The Fourth Amendment permits protective sweeps of areas beyond the space "immediately adjoining the place of arrest" when there exist "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 334 (1990); see United States v. Davis, 471 F.3d 938, 944 (8th Cir. 2006) ("A protective sweep may be executed after an arrest if there is a reasonable possibility that other persons may be present on the premises who pose a danger to the officers."). We find no error in the district court's determination that a protective sweep of the home was supported by a reasonable suspicion that other persons may have been hiding therein. See Davis, 471 F.3d at 944 ("We review the District Court's factual findings for clear error and its legal conclusions de novo when examining the motion to suppress."). The deputies knew of Hanuman's history of possessing firearms and using drugs, as well as of the presence of surveillance cameras at his residence. They saw two cars at Hanuman's residence and lights on in his home. Having sought and obtained permission to breach the door, they were delayed in apprehending any possible

assailants, providing time for any such persons to hide. Although Hanuman may not have been required to respond to their inquiries, neither were the deputies required to rest assured from his silence, or from the severely traumatized, oxygen-deprived victim's responses, that no other individuals might be present who could pose a threat to their or to the victim's safety, as well as to the safety of those who were attending to her needs. The deputies' brief, reasonably based protective sweep thus did not violate Hanuman's Fourth Amendment rights notwithstanding his immobilization. See Davis, 471 F.3d at 945 (upholding protective sweep because the existence of surveillance cameras and the presence of multiple cars on the property, as well as the knowledge of defendant's prior firearms possession, are factors that can indicate a "heightened possibility of a surprise attack"); United States v. Waters, 883 F.3d 1022, 1025-26 (8th Cir. 2018) (per curiam) (upholding protective sweep notwithstanding the defendant's fiancée's statement to investigating officers that the defendant was the only person inside the residence). In so holding, we have considered United States v. Rodriguez, 834 F.3d 937 (8th Cir. 2016), and United States v. Waldner, 425 F.3d 514 (8th Cir. 2005), and find that they are distinguishable on their facts. Among other things, both cases involved non-arrest situations, and neither case involved a hidden, yet to be found and restrained non-responsive subject.

The judgment is affirmed.

_____