# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2122
_____

United States of America

*Plaintiff - Appellee*

v.

Byron Williams

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: April 17, 2025
Filed: June 13, 2025
_____

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Byron Williams pled guilty to three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court[1] sentenced him to a total of 240 months' imprisonment. Williams appeals, arguing

_____

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

both procedural error and the substantive unreasonableness of his sentence. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

On three separate occasions between January 2020 and March 2021, Williams was found in possession of handguns, which he was forbidden from possessing because of his prior felony convictions for possessing a controlled substance, endangering the welfare of a child, and second-degree domestic assault. On the first occasion in January 2020, a police officer conducted a traffic stop on a vehicle driven by Williams, who had four outstanding arrest warrants. After arresting Williams, the officer performed a routine inventory search prior to towing the vehicle and found a semiautomatic handgun with Williams's fingerprints on it. Then, in June 2020, police officers responded to a call from Williams's ex-girlfriend, who claimed that she had gotten into an altercation with Williams and that she saw Williams drop a semiautomatic handgun before she fled the scene. The officers recovered the handgun, and investigators discovered Williams's fingerprints on it. Finally, in March 2021, officers responded to a disturbance and arrived to find a woman who claimed that Williams had taken a handgun from her home. After being tracked and spotted by police a few days later, Williams got into a vehicle and led the investigating officers on a high-speed chase. Williams crashed into a tree and attempted to flee on foot before he was ultimately apprehended. The police then discovered the firearm that Williams had reportedly taken a few days prior hidden in a nearby area; after waiving his Miranda[2] rights, Williams admitted to taking and possessing the weapon.

In April 2021, a grand jury indicted Williams on two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), based on the June 2020 and March 2021 conduct. Williams moved for a determination of his competency to stand trial, and his motion was granted. The

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

forensic psychologist with the Bureau of Prisons, Dr. Leticia Armstrong, classified Williams as malingering, concluding that there was "substantial evidence to support that Mr. Williams deliberately feigned severe psychiatric symptoms . . . and that he d[id] not appear to be suffering from a severe mental disease or defect" that would preclude him from standing trial. Williams procured his own expert psychologist, Dr. Lisa Witcher, who ultimately thought that Williams was not competent to stand trial but stated at the competency hearing that she "d[id not] think that Dr. Armstrong was wrong overall" because Williams's "malingering was blatant" when Armstrong tested him. The magistrate judge ultimately credited Armstrong's report over Witcher's and recommended Williams be found competent to stand trial. The district court adopted the report and recommendation in full. The grand jury then issued a superseding indictment that added a third felon-in-possession charge against Williams based on his January 2020 conduct. Williams pled guilty to all charges.

At sentencing, the district court calculated Williams's United States Sentencing Guidelines (USSG) range to be 130 to 162 months' imprisonment. When arguing its recommendation, the Government emphasized Williams's lengthy criminal history and the district court's prior finding that Williams was malingering. Williams's counsel then attempted to make an argument that Armstrong's opinions "were based a lot on assumption." The district court then told counsel "not [to] argu[e] [the competency issue] again," and that, if counsel was going to "continue to argue that, [the court was] going to ask [her] to sit down" without any further argument. Then, the following exchange occurred:

> [COUNSEL]: Judge, I'm asking for clarification on what I can get into—
>
> THE COURT: You cannot argue any more about this . . . . I just don't want to hear it. It's already preserved. You lost. Your client, I found, is a malingerer, who tried to commit a fraud on the court. So that's how this is going to work out. Anything else you want to argue, I would request that you proceed now or sit down.

[COUNSEL]: I was trying to ask for clarification because there were other exhibits . . .

. . . .

THE COURT: Did you present this to [the magistrate judge]?

[COUNSEL]: I did, Your Honor, and it's also a 3553(a) factor.

THE COURT: I don't need to hear it again.

[COUNSEL]: So I'm not allowed to argue 3553(a) factors.

THE COURT: You can. You can't argue the competency findings of this Court.

[COUNSEL]: Your Honor, I understand that this was part of the competency hearing—

THE COURT: Sit down. Sit down. Just sit down. Do you want to sit down, please? Any other factors you want to talk about?

[COUNSEL]: Judge, yes.

THE COURT: Okay, talk about the other factors.

[COUNSEL]: You're preventing me from talking about them.

THE COURT: Do you want to talk about any other factors? If you do, talk; if not, sit in that chair, please.

[COUNSEL]: I am attempting to do so. . . .

. . . .

THE COURT: Your powers of persuasion are not working, I don't think, the way you think they do, [Counsel].

[COUNSEL]: I am confused. I am not understanding why Government's counsel is allowed to go into the competency issue and I'm not.

THE COURT: Because he won. He won. . . . Now, he may have some cognitive issues. I'll let you talk about those . . . .

[COUNSEL]: Judge, that's not at all what I was trying to say.

THE COURT: Spit it out, [Counsel]. Tell us what's on your mind.

R. Doc. 91, at 17-20. The district court then allowed Williams's counsel to proceed uninterrupted and make her argument in favor of several mitigating factors, including Williams's history of intellectual disability and the stigmatization he experienced as a child. Counsel also stated that, while she "d[id not] mean to attach any shame . . . [she] d[id] want the [c]ourt to know the full picture of the 3553(a) factors," hence her lengthy discussion of Williams's intellectual disability. After walking through more of Williams's future plans and his familial and criminal history, counsel asked the court to "take into consideration all of these factors" and impose a sentence of no more than 10 years.

Before imposing a sentence, the district court acknowledged that, "while [he] may have been a little bit frustrated with [Williams's] lawyer's approach initially," he was "not going to [hold that] against [Williams]" and that he "d[id not] disagree that [Williams] ha[d] some intellectual issues." The district court, however, determined that Williams's disrespect for the law, criminal history, characteristics, and high risk of recidivism weighed in favor of an upward variance. The district court sentenced Williams to 120 months' imprisonment on all three counts, with counts 2 and 3 running concurrently to each other but consecutively to count 1, for a total of 240 months' imprisonment. Williams now appeals.

II.

Williams challenges both the procedural soundness and substantive reasonableness of his sentence. "This [C]ourt reviews sentences in two steps: first, for significant procedural error; and if there is none, for substantive reasonableness." United States v. Williams, 624 F.3d 889, 896 (8th Cir. 2010). "We review all sentences, whether inside or outside the Guidelines range, under a deferential abuse of discretion standard." United States v. Ruiz-Salazar, 785 F.3d 1270, 1272 (8th Cir. 2015) (per curiam) (citation omitted).

A.

Williams first argues that the district court committed procedural error by limiting his argument in favor of a downward variance at sentencing. "If preserved for appeal[,] we review a procedural error under an abuse of discretion standard; if not properly preserved[,] we review for plain error." United States v. Jones, 563 F.3d 725, 729 (8th Cir. 2009). The Government argues that we should review this challenge for plain error, claiming that Williams failed to object below. "This [C]ourt need not decide the issue because [Williams]'s claim fails under either standard." See United States v. Poitra, 60 F.4th 1098, 1102 (8th Cir. 2023).

Williams argues that the district court improperly limited his counsel's argument at sentencing in favor of a downward variance, resulting in a failure to properly consider the § 3553(a) factors in light of his intellectual disabilities. See Williams, 624 F.3d at 896 (noting that a failure to consider the § 3553(a) factors constitutes procedural error). This argument fails on its premise, as the district court eventually *did* afford Williams a meaningful opportunity to be heard. While we acknowledge that, initially, the district court repeatedly interrupted Williams's counsel and even told her to "sit down" because she "d[id not] need to argue anymore," the court ultimately relented, asking counsel to "[t]ell [the court] what's on [her] mind." Throughout her nine-page monologue, counsel was able to make several points on Williams's history of mental illness, including a discussion on the

-6-

history and documentation of Williams's mental disability during his primary education; inability to fill out job applications; family members "tak[ing] advantage of him" because of his mental disability; and his consistent referral to his deceased father "in the present tense," "as if he [were] still here." Williams's counsel acknowledged that she gave the district court the "full picture of the [§] 3553(a) factors" during her argument, ultimately asking the court "to take into account [Williams's] history and characteristics" before concluding.

On appeal, Williams points to no argument or contention that his attorney wanted to make below but was prevented from offering, and by the end of the hearing, "[n]othing prevented [Williams's] counsel from arguing" that his intellectual disability should result in a reduced sentence. See United States v. Scherer, 114 F.4th 987, 992 (8th Cir. 2024). Like in Scherer, Williams "did, in fact, present [his] arguments . . . to demonstrate most of these mitigating factors." Id. The district court ultimately listened to Williams's arguments and even stated that "while [it] may have been a little bit frustrated with [Williams's] lawyer's approach initially," it was "not going to [hold that] against [Williams]" and that it "d[id not] disagree that [Williams] ha[d] some intellectual issues." At most, Williams was precluded from relitigating an already decided issue before the court—his competency—and was otherwise fully heard at the sentencing hearing. See United States v. Carter, 355 F.3d 920, 926 (6th Cir. 2004) ("The court merely informed [the defendant] it did not wish to hear an irrelevant sentencing argument which had already been properly made before the court during [a previous proceeding]."). We discern no abuse of discretion by the district court on this basis.

B.

Next, Williams argues that his sentence is substantively unreasonable. "[T]his [C]ourt reviews for [substantive] reasonableness under a deferential abuse of discretion standard." Williams, 624 F.3d at 896. "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor;

or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Edison, 756 F.3d 638, 640 (8th Cir. 2014) (per curiam) (citation omitted). "[A] major departure [from the Guidelines] should be supported by a more significant justification than a minor one." United States v. Haskins, 101 F.4th 997, 999 (8th Cir. 2024) (first alteration in original) (citation omitted). "But it is 'the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable.'" Id. (citation omitted).

The district court sentenced Williams to a total of 240 months' imprisonment, an upward variance from Williams's recommended Guidelines range of 130 to 162 months' imprisonment. Williams argues that this was an abuse of discretion as the district court did not properly consider how his mental disability factored into his sentence and Williams's original recommended Guidelines range "fully accounted for his criminal conduct." Neither argument is persuasive.

First, "courts may vary upward based on factors already considered under the Guidelines if they determine 'the weight the Guidelines assigned to a particular factor was insufficient.'" United States v. Petersen, 22 F.4th 805, 808 (8th Cir. 2022) (alteration in original) (citation omitted). The district court appropriately did so here, justifying the upward variance based on Williams's consistent disrespect for the law, his high risk of re-offending, and the danger that he posed to the community. See United States v. Thorne, 896 F.3d 861, 865 (8th Cir. 2018); see also United States v. Barrett, 552 F.3d 724, 726 (8th Cir. 2009) (noting that "[§] 3553(a) allows courts to vary upward based on an underrepresented criminal history or recidivism"); United States v. Fogg, 409 F.3d 1022, 1026 (8th Cir. 2005) (affirming upward departure where defendant's "criminal activity was not adequately reflected by her criminal history score"). There was no abuse of discretion by the district court on this basis.

Finally, the district court did not abuse its discretion by failing to discuss Williams's mental disability at length when fashioning the sentence. The district

court expressly acknowledged and considered Williams's intellectual disability before announcing its ruling. See supra Part II.A. But even in light of Williams's "very good points," the district court found other § 3553(a) factors outweighed any mitigating factors: namely, Williams's history of disrespect for the law, the need to protect the public, and Williams's high risk of recidivism. Additionally, Williams had several pending assault charges and a litany of convictions wherein he fled from police, at one point engaging an officer in a high-speed chase with a two-year-old child standing up in the backseat, hitting speeds greater than 100 miles per hour. "That the district court weighed more heavily 'the seriousness of the offense,' 'deterrence to criminal conduct,' [and] protection of the public, . . . does not make [Williams]'s sentence substantively unreasonable." See United States v. Ross, 29 F.4th 1003, 1009 (8th Cir. 2022) (quoting 18 U.S.C. § 3553(a), (2)(A)-(B)). Giving "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance," Gall v. United States, 552 U.S. 38, 51 (2007), we conclude that there was no abuse of discretion in imposing a term of 240 months' imprisonment given Williams's criminal history, high risk of recidivism, and the possible danger he poses to public safety.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____