**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 22 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES<br><br>    Plaintiff-Appellee,<br><br>  v.<br><br>ANDRE BROWN, AKA Dre, AKA Gay Dre, AKA King Dre,<br><br>    Defendant-Appellant. | No.   19-50025<br><br>D.C. No. 2:13-cr-00822-ODW-2<br><br><br>MEMORANDUM[*] |
| UNITED STATES<br><br>    Plaintiff-Appellee,<br><br>  v.<br><br>ANTHONY WILSON, AKA Ankey,<br><br>    Defendant-Appellant. | No.   19-50037<br><br>D.C. No. 2:13-cr-00822-ODW-3 |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, II, United States District Judge, Presiding.

Argued and Submitted September 1, 2020
Pasadena, California

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: IKUTA and BENNETT, Circuit Judges, and WOODLOCK,[**] District Judge.

A jury convicted Andre Brown and Anthony Wilson of conspiring to manufacture, distribute, and possess with intent to distribute Phencyclidine (PCP), and illegally possessing a listed chemical, Piperidine, under 21 U.S.C. § 846. Brown was also convicted of distribution and possession with intent to distribute PCP, under 21 U.S.C. § 841(a)(1), (b)(1)(B)(iv). The district court sentenced Brown to 150 months and Wilson to 204 months. They both appeal their convictions, and Brown also appeals his sentence. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

1.     The district court did not err in denying Wilson's motion to suppress the evidence obtained from the search of his SUV. We review "reasonable suspicion determinations de novo" and "findings of historical fact for clear error," while "giving 'due weight to inferences drawn from those facts by resident judges and local law enforcement officers,'" *United States v. Valdes-Vega*, 738 F.3d 1074, 1077 (9th Cir. 2013) (en banc) (quoting *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc)). Not every encounter with the police is a search or seizure. *United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007). A seizure occurs only when a reasonable person would believe he was not free to go based

[**]     The Honorable Douglas P. Woodlock, United States District Judge for the District of Massachusetts, sitting by designation.

2

on police conduct. *Id.* at 769. Here, nothing in the record supports Wilson's assertion that the officers made any "show of authority" during their initial approach. Nor does the record show that the officers turned on their sirens or lights, brandished their flashlights, or touched their weapons when starting the encounter. *See id.* at 770. Rather, the officers pulled up behind Wilson's SUV, did not block it, and simply walked up to the SUV to speak with the occupants. There was no seizure for Fourth Amendment purposes. Once the conversation began, the officers smelled a strong odor they believed to be PCP coming from the clothes of Wilson and his passenger. A strong PCP smell also permeated the neighborhood, and someone bolted from the backyard of the house next to Wilson's parked SUV as the officers approached the SUV prior to the conversation. Even if the initial conversation later turned into a seizure during the encounter, the officers had more than reasonable suspicion for an investigatory stop from smelling a PCP odor coming from the clothes of the SUV's occupants.[1] *See United States v. Johnson*, 913 F.3d 793, 801 (9th Cir. 2019) (officer had probable cause to search the car during a stop after smelling marijuana while first approaching the car), *vacated on*

---

[1] And any potential error here was harmless. The jury acquitted Wilson of the PCP possession charge based on the stop. Setting aside the evidence recovered from the SUV, the other evidence of Wilson's involvement in the conspiracy was overwhelming. Thus, there is "a fair assurance that the verdict" on the conspiracy charge "was not substantially swayed by the error." *See United States v. Chase*, 340 F.3d 978, 993 (9th Cir. 2003) (en banc) (citation omitted) (non-constitutional evidentiary errors are subject to harmless error analysis).

*other grounds,* 140 S. Ct. 440 (2019). Though Brown argues the PCP smell could have come from the neighborhood and not the car, reasonable suspicion does not require the officers to "rule out the possibility of innocent conduct." *Valdes-Vega*, 738 F.3d at 1078-79 (citation omitted).

**2.** Wilson and Brown next contend that the district court erred in denying their suppression motion because the government failed to show necessity for the wiretaps. We review "de novo whether an application for a wiretap order is supported by a full and complete statement of the facts," and then for abuse of discretion a district court's "conclusion that the wiretap was necessary." *United States v. Rivera*, 527 F.3d 891, 898 (9th Cir. 2008). We find no error here.

Both the 51-page affidavit for Brown's phone, and the 77-page affidavit for Wilson's phone, "adequately describe[d] the DEA's use of various investigative techniques" during the investigation, "explain[ed] why those techniques did not achieve the purposes of the investigation and explain[ed] why the DEA did not use other investigative techniques because they were deemed unlikely to achieve those purposes," *id.* For example, Agent Zapata adequately explained why a search of Brown's residence was not effective, and why the confidential informant could not be used, before obtaining a wiretap on Wilson's phone. *See id.* at 898-99. The affidavits contained a full and complete statement of the facts.

4

The district court did not abuse its discretion in its necessity findings. Like in *Rivera*, "the DEA conducted far more than a cursory investigation before applying for [each] wiretap," *id.* at 903, including the use of confidential informants, undercover agents, physical surveillance, pole cameras, pen registers, search warrants, trash searches, and financial investigations. While the government generally cannot use a wiretap as "the initial step in the investigation," it "need not exhaust every conceivable alternative before obtaining" one. *Id.* at 902 (quotation marks and citation omitted).

**3.** Wilson also asserts the government violated his Sixth Amendment and statutory rights to a speedy trial. We review both claims de novo, but review "the court's underlying factual findings for clear error." *United States v. Sutcliffe*, 505 F.3d 944, 956 (9th Cir. 2007).

The district court did not err in finding the trial delay did not violate Wilson's Sixth Amendment right. In reaching this conclusion we consider four factors: "[1] whether delay before trial was uncommonly long, [2] whether the government or the criminal defendant is more to blame for that delay, [3] whether, in due course, the defendant asserted his right to a speedy trial, and [4] whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

5

The length of delay is a threshold factor—Wilson must show the delay is "presumptively prejudicial" for the court to then consider and weigh the other three factors. *See United States v. Myers*, 930 F.3d 1113, 1119 (9th Cir. 2019). Because Wilson fashioned his Sixth Amendment claim before the district court and in his opening brief by focusing only on the 14-month delay between his arrest and trial, we do not consider the nearly four years between the indictment and his arrest.[2] We find this factor slightly favors Wilson, because, even for complex cases like this one, a 14-month delay has been found to be sufficient to meet the threshold. *See, e.g.*, *United States v. Tanh Huu Lam*, 251 F.3d 852, 856-57 (9th Cir. 2001).

The second factor is linked to the first and focuses on "the reason the government assigns to justify the delay." *Myers*, 930 F.3d at 1119 (citation omitted). Here, the district court twice delayed the trial date because an overwhelming majority of Wilson's co-defendants sought continuances to prepare for trial. *Cf. id. at* 1119-20 ("[G]ood-faith, reasonable justification for the delay such as a missing witness, or a meritorious interlocutory appeal will weigh less

---

[2] When the defendant is indicted before arrest, "[t]he delay is measured from the time of indictment to the time of trial." *Myers*, 930 F.3d at 1119; *see also United States v. Marion*, 404 U.S. 307, 313 (1971) (Sixth Amendment right attaches from the time "the putative defendant in some way becomes an 'accused'" such as when an indictment is filed). But we will not consider arguments not raised in the opening brief or issues not raised before the district court. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("arguments not raised by a party in its opening brief are deemed waived").

heavily against the government or not weigh against the government at all."). And during this time Wilson himself contributed to the delay by seeking pretrial rulings, including *Faretta* hearings, which led to the appointment of new counsel. Thus, we find this factor is neutral.

Third, Wilson did assert his right to a speedy trial by moving to dismiss the indictment. But we weigh his timely assertion against his conduct, which included multiple *Faretta* hearing requests, including on the first morning of trial. *See Sutcliffe*, 505 F.3d at 957. These requests, one of which led to new trial counsel, contributed to the delay. Thus, the factor only weighs slightly in Wilson's favor.

Finally, we find Wilson suffered minimal prejudice, and this factor weighs heavily against him. Wilson must show actual prejudice. *Myers*, 930 F.3d at 1120 (noting the three ways to show actual prejudice are (1) "oppressive pretrial incarceration"; (2) "anxiety and concern of the accused" and (3) "the possibility that the defense will be impaired" (citation omitted)). Wilson primarily argued before the district court and on appeal that he was prejudiced because he was unable to locate two eyewitnesses that were willing to testify about his midnight encounter with the police in his SUV. He also briefly argues he was prejudiced because he was incarcerated for 14 months and the incarceration increased his anxiety and preexisting back pain.

The district court did not clearly err in finding that he was not prejudiced from being unable to locate the witnesses. *See United States v. Guerrero*, 756 F.2d 1342, 1350 (9th Cir. 1984) (defendant did not "sufficiently show[] any causal relationship between the delay and the unavailability of two witnesses" that were allegedly with him "on the day of the robbery" because he "did not have these witnesses under subpoena" and "made no attempt to keep in touch with them"). Nor has Wilson shown that the 14-month incarceration or associated anxiety and back pain was more than minimally prejudicial. *See Barker*, 407 U.S. at 534 (finding defendant suffered minimal prejudice when he spent 10 months in jail before trial and spent four years on bond "under a cloud of suspicion and anxiety"). This was a complex conspiracy case that at first involved almost 40 co-defendants, and Wilson has not shown that he suffered more than minimal prejudice from the 14-month incarceration during the trial delay. The government thus did not violate Wilson's Sixth Amendment speedy trial right.

The government also did not violate Wilson's statutory speedy trial right under 18 U.S.C. § 3161, the Speedy Trial Act. The Act requires that trial commence within 70 days of Wilson's first appearance but permits the trial court to exclude time. *See United States v. Butz*, 982 F.2d 1378, 1381 (9th Cir. 1993). The trial court did not clearly err in excluding time while twice continuing the trial. *See id.* (reasonable to grant continuance for large scale conspiracy involving nine

8

defendants, 29-count indictment and "hundreds of hours of tape time"). Nor was this delay unreasonable given the number of defendants and the complexity of the case. *See United States v. Lewis*, 611 F.3d 1172, 1176 (9th Cir. 2010) (noting that the district court's reasons must satisfy 18 U.S.C. § 3161(h)(7) and also be reasonable under § 3161(h)(6)). Here, applying a totality of the circumstances approach, *see Lewis*, 611 F.3d at 1177, the time allowed for the two continuances was reasonable. The first continuance was about 8 months, and granted after 11 of 15 remaining co-defendants sought the continuance because of the complex nature of the case. *See id.* (addition of two codefendants made a one and a half month delay reasonable). The second continuance was for less than four months, and was granted after 4 of the remaining 6 co-defendants sought the continuance to prepare for trial given the complexity of the conspiracy case.[3] And Wilson cannot show that he suffered actual prejudice during this delay.

Thus, the district court did not err in denying Wilson's motion to dismiss the indictment.

**4.** The district court did not abuse its discretion in allowing Agent Zapata to provide lay opinion testimony. *See United States v. Barragan*, 871 F.3d 689, 704 (9th Cir. 2017). Many of the instances that Brown identifies in the briefs

---

[3] Brown also objected to the continuance, but his new trial counsel told the court he could not be ready for the trial in time.

and at oral argument of alleged expert testimony fall comfortably within the types of lay opinions law enforcement officers can offer by drawing on their "wealth of personal information, experience, and education." *United States v. Gadson*, 763 F.3d 1189, 1208 (9th Cir. 2014). Our precedents firmly allow an agent to interpret coded language and phone calls based on his experience with the investigation and familiarity with the calls. *See Barragan*, 871 F.3d at 704. And Brown does not explain how he was prejudiced by the specific instances of supposed expert or unhelpful testimony he identifies in his briefs. The overwhelming evidence linking Brown to the conspiracy makes any error in allowing stray expert statements harmless.

5.      The district court did not err, much less plainly err, in not giving a sua sponte dual role instruction for Agent Zapata's testimony. Agent Zapata only testified as a lay witness, not an expert, and Brown has cited no case that requires a dual role instruction in such a circumstance.

6.      The district court also did not err by not giving a multiple conspiracies instruction. While we have not been consistent as to the proper standard in "reviewing the district court's refusal to give a multiple conspiracies instruction when the parties dispute whether there was sufficient evidence to support such an instruction," *United States v. Job*, 871 F.3d 852, 867 (9th Cir. 2017) (collecting

10

cases applying both abuse of discretion and de novo review), we need not resolve the inconsistency because the claim fails on de novo review.

A multiple conspiracies instruction is required only if there is sufficient evidence to support the instruction. *Id.* Here there was insufficient evidence that Wilson and Brown were participating in a conspiracy separate from the one charged in the indictment. *See id.* (evidence is sufficient "to support a multiple conspiracies instruction . . . whe[n] a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment" (citation omitted)).

7.      Finally, Wilson argues that the district court erred in not giving a buyer-seller jury instruction.[4] *See United States v. Moe*, 781 F.3d 1120, 1123 (9th Cir. 2015). To reverse we must, at a minimum, find that the jury instructions "considered in their entirety, fail[ed] to cover the defense theory." *Id.* at 1127-28. But here the jury instructions were identical to those found sufficient in *Moe*. *Id.* at 1128. And like in *Moe*, the only other crime with which Wilson was charged did not relate to his sale of PCP to a co-conspirator. *Id.* Wilson was also acquitted of this non-conspiracy charge (possession with intent to distribute), further reducing the possibility that the jury was confused between the two charges. We presume

_____

[4] We assume that Wilson's claim was sufficiently preserved based on Mangram's objection to the lack of a buyer-seller instruction. *See United States v. Brown*, 562 F.2d 1144, 1147 n.1 (9th Cir. 1977).

11

the jury followed the instructions and find that "[t]he instructions as a whole accurately informed the jury that a conspiracy could not be found based only on the sales." *Id.*

8.     Brown challenges the sufficiency of the evidence for his conviction of possession with intent to distribute under 21 U.S.C. § 841(a)(1). Reviewing de novo, we apply "the well-known standard developed by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979)." *United States v. Garrison*, 888 F.3d 1057, 1063-64 (9th Cir. 2018).

Viewing the phone calls and Agent Zapata's testimony in the light most favorable to the prosecution, there is sufficient evidence for "a rational trier of fact" to conclude that Brown knowingly distributed PCP to the confidential informant. *See United States v. Lemus*, 847 F.3d 1016, 1021-22 (9th Cir. 2016).

9.     Brown also challenges the reasonableness of his sentence. Reviewing for abuse of discretion, we will "reverse only if the [district] court applied an incorrect legal rule or if the sentence was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Martinez-Lopez*, 864 F.3d 1034, 1043-44 (9th Cir. 2017) (en banc) (citation and quotation marks omitted). The district court properly considered the 18 U.S.C. § 3553(a) factors, and adequately explained the sentence it selected, after considering potential sentencing disparities.

Brown's recommended sentencing guidelines range was 324 to 405 months.

Nothing in the record suggests that the actual 150-month sentence was "illogical,

implausible, or" unsupported by the record. *Id.* at 1043 (citation omitted).

**AFFIRMED.**